BRADLEY/GROMBACHER LLP
Kiley L. Grombacher (SBN 245960)
kgrombacher@bradleygrombacher.com
Plaintiff ALONA C. AUSTRIA
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: 805-270-7100
Fax: 805-270-7589

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALONA C. AUSTRIA | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| Defendant "1" a/k/a "Le" and John | ) |
| Doe Defendants 1-10 who are the cohorts of | ) |
| Defendant "1" and are the owners of the | ) |
| following cryptocurrency deposit wallets where | ) |
| Plaintiff's stolen cryptocurrency assets were | ) |
| transferred: | ) |
| Binance: | ) |
| 0xca35a257f63ec765ac6505efe77aa4dabfdf1df1, | ) |
| 0xc35803007af088764bb0ec3bc3a9a7212efc6b7d, | ) |
| 0x9f889d090e069b67e9e18682d81700e51d97c970, | ) |
| 0xd8cc1b581b63915916501a48a073f2673c315d9a, | ) |
| 0x5bb20604291b91efbec2fb3fe3da93ce62cdea55, | ) |
| 0x42b04e5db8ed08edd24b060a5a4cc6ee6fe8a469, | ) |
| 0x512e2292d5df8105b6ae0fa6583df7b35429fe4c, | ) |
| Crypto.com: | ) |
| 0x32d75edcc7ee22ca792c40a6b22531d7cf85f470, | ) |
| Gate.io: | ) |
| 0x963453a6e6618fdb4f493b4d7f4a220e15ef8726, | ) |
| Eigenfx: | ) |
| 0x2fde0d9016c6e7bbd53a353086775ffcf97dae0c, | ) |
|  | ) |
| Defendant(s). | ) |

# COMPLAINT FOR
# VIOLATION OF THE RACKETEER INFLUENCED
# AND CORRUPT ORGANIZATIONS ACT

Plaintiff, ALONA C. AUSTRIA, by and through undersigned counsel, sues Defendant "1" a/k/a "Le" and John Doe Defendants 1-10, as follows:

## PRELIMINARY STATEMENT

1. Defendants stole 92.388 Ethereum (ETH) and 40,985.19 Tether (USDT) from Plaintiff pursuant to a sophisticated global internet cryptocurrency fraud and conversion scheme, the current market value of which is two hundred eighty-two thousand one hundred twenty-five dollars and twenty-six cents ($282,125.26) [1].

2. Defendant "1" played a material role in the theft of Plaintiff's assets, and upon information and belief, he and his cohorts currently possess all or a significant portion of Plaintiff's stolen property.

3. Plaintiff brings this lawsuit to recover her stolen assets.

## SUBJECT MATTER JURISDICTION AND VENUE

4. This is an action for damages related to the theft of Plaintiff's cryptocurrency assets as detailed below. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). This action

---

[1] Current market value calculated using data from etherscan.io and blockchain.com on August 22, 2024.

includes damages pursuant to 18 U.S.C. § 1964 (the "Racketeer Influenced and Corrupt Organizations Act" or "RICO"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

5. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c).

6. Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of California and this district through at least a fraudulent website and mobile application (www.short-termtradingset.top) which can be accessed on the internet and on smartphones and is accessible from California.

7. Plaintiff accessed the fraudulent website (www.short-termtradingset.top) in the State of California and the theft occurred while Plaintiff was located in the State of California. Defendants directed numerous false and fraudulent representations to Plaintiff in this district, stole Plaintiff's assets within this district, and caused significant harm to Plaintiff in this district.

8. Every website has at least one associated IP address that it uses to communicate with devices on a network. The IP address for www.short-termtradingset.top is 43.130.153.34. Plaintiff has tracked the www.short-termtradingset.top IP address to Virginia.

## THE PARTIES AND PERSONAL JURISDICTION

9. Plaintiff, an individual, is *sui juris*, and is a resident and citizen of California.

10. Defendant "1" is an individual, is sui juris, and is subject to the personal jurisdiction of this Court. Defendant "1" represented to Plaintiff ALONA AUSTRIA that his name was "Le" and that he is a Chinese citizen.

11. John Doe Defendants 1-10 are the cohorts of Defendant "1" and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred:

- Binance:
    - 0xca35a257f63ec765ac6505efe77aa4dabfdf1df1
    - 0xc35803007af088764bb0ec3bc3a9a7212efc6b7d
    - 0x9f889d090e069b67e9e18682d81700e51d97c970
    - 0xd8cc1b581b63915916501a48a073f2673c315d9a
    - 0x5bb20604291b91efbec2fb3fe3da93ce62cdea55
    - 0x42b04e5db8ed08edd24b060a5a4cc6ee6fe8a469
    - 0x512e2292d5df8105b6ae0fa6583df7b35429fe4c
- Crypto.com:
    - 0x32d75edcc7ee22ca792c40a6b22531d7cf85f470
- Gate.io:
    - 0x963453a6e6618fdb4f493b4d7f4a220e15ef8726
- Eigenfx:
    - 0x2fde0d9016c6e7bbd53a353086775ffcf97dae0c

12. John Doe Defendants 1-10 are *sui juris* and subject to the personal jurisdiction of this Court. John Doe Defendants 1-10 have not only intentionally

concealed their identities as part of their scheme to defraud Plaintiff, but as part of their conspiracy, directed fraudulent communications towards Plaintiff in California, causing Plaintiff to suffer significant economic and emotional harm while in California.

13. At all times material hereto, Defendants have maintained and continue to maintain private cryptocurrency wallets and cryptocurrency exchange accounts in which all of or a portion of Plaintiff's stolen cryptocurrency currently sits.

## ALLEGATIONS COMMON TO ALL COUNTS

**A. Defendants Execute an International Cryptocurrency Theft Scheme**

14. Plaintiff is a victim of not only a nationwide but also a worldwide RICO conspiracy known as "pig butchering."

15. Pig butchering scams are "fraudulent crypto investment schemes directed from Asia," which are now a billion-dollar industry.[2]

16. Pig butchering scams, typically run and perpetrated by organized criminal groups in Southeast Asia, are called such because the victims are "likened to hogs fattened up for slaughter."[3]

17. The scammers, typically located in Southeast Asia, carefully research their victims and can spend months grooming the victim to gain their trust.

---

[2] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/
[3] https://www.nbcnews.com/news/crime-courts/pig-butchering-scams-rise-fbi-moves-stop-bleeding-rcna137009

18. Pig butchering scammers utilize expertly crafted copycat websites that replicate authentic trading platforms. These scammers simulate trades and returns and the victims are unaware of the scheme.[4]

19. About February 2023, Plaintiff met Defendant "1" a/k/a "Le" on match.com. Defendant "1" continued to communicate with Plaintiff via Whatsapp.

20. Defendant "1" a/k/a "Le" used multiple fake identities on social media platforms. Defendant "1" is currently representing himself as "Kevin" on social media.

21. Defendant "1" misrepresented that he would teach Plaintiff how to become a successful cryptocurrency trader.

22. Defendant "1" lured Plaintiff by showing her examples over WhatsApp of how he was successfully earning high returns on his cryptocurrency trading methods.

23. Defendant "1" represented to Plaintiff that he was using a trusted website (www.short-termtradingset.top) that, according to Defendant "1", was owned and operated by Crypto.com.

24. Defendant "1" assisted Plaintiff in utilizing www.short-termtradingset.top which he claimed was the trading website operated by Crypto.com. He stated that www.short-termtradingset.top would be used as a trading

---

[4] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/

platform with the purpose of making transactions; and when done, the assets would be transferred to Crypto.com for withdrawal.

25. However, the website Defendant "1" provided to Plaintiff was not a legitimate exchange platform owned and operated by Crypto.com but was instead a fraudulent copycat website created to deceive individuals, including Plaintiff, into believing they were investing on a legitimate cryptocurrency exchange owned and operated by Crypto.com.

26. To further entice Plaintiff into believing he was a legitimate investor who only wanted to assist Plaintiff in becoming a successful cryptocurrency trader like him, on or about February 2, 2023 Defendant "1" had Plaintiff run a test where she transferred approximately two thousand two hundred and twelve dollars ($2,212.00) worth of cryptocurrency from her Crypto.com account into the fraudulent www.short-termtradingset.top platform. When Plaintiff was able to transfer this amount back to her digital wallet, she believed that Defendant "1" was a legitimate investor who wanted to help her learn how to invest cryptocurrency and, further, that the fraudulent website she had been utilizing was also legitimate.

27. After familiarizing herself with the process of trading on the fraudulent website recommended by Defendant "1," and in reliance on the foregoing false and fraudulent misrepresentations, Plaintiff started to transfer cryptocurrency from her Crypto.com account, a legitimate third-party online platform for buying, selling,

transferring, and storing cryptocurrency, to the fraudulent website (www.short-termtradingset.top).

28. Defendants posted fraudulent returns on their fake website which made it appear that Plaintiff was making money on her trades.

29. As a result, she continued to transfer cryptocurrency from her Crypto.com account to the fraudulent exchange. Because of the fraudulent representations contained on the fake www.short-termtradingset.top account, and misrepresentations made by Defendant "1", and additional individuals who claimed to be account managers and/or customer service representatives for www.short-termtradingset.top, Plaintiff believed that she had made significant money from the investment.

30. Plaintiff was told by Defendant "1" that the value of her cryptocurrency had grown from approximately two hundred ten thousand three hundred twenty-five dollars ($210,325.00) to approximately five hundred eighteen thousand four hundred seventy-seven dollars and forty cents ($518,477.40), which was also reflected on the fraudulent www.short-termtradingset.top statements.

31. Plaintiff was happy with what she believed was a significant return on Plaintiff's investment. However, Plaintiff decided it was time to transfer some of the cryptocurrency from www.short-termtradingset.top back to Plaintiff's Crypto.com account. When Plaintiff attempted to withdraw her cryptocurrency from the

fraudulent website, Plaintiff experienced issues and was unable to make transfers.

32. However, Plaintiff was told by individuals claiming to be www.short-termtradingset.top customer representatives that before she could withdraw her cryptocurrency, she was required to transfer an additional eighty-six thousand dollars ($86,000.00) worth of cryptocurrency to the fraudulent www.short-termtradingset.top exchange to pay taxes on her earnings.

33. When Plaintiff questioned Defendant "1" about the transfer issues she was experiencing, Defendant "1" provided excuses and made additional false representations.

34. Additionally, when Plaintiff confided in Defendant "1" that she no longer had any more money to invest, Defendant "1" grew angry with her and threatened to no longer assist her with her cryptocurrency investments.

35. Plaintiff communicated with additional individuals who claimed to be www.short-termtradingset.top customer service representatives and account managers and assured Plaintiff that everything would be resolved once she deposited an additional forty-one thousand dollars ($41,000.00) worth of cryptocurrency to raise her credit score in order for her to complete her withdrawal.

36. After multiple unsuccessful attempts to try to reach individuals who claimed to be www.short-termtradingset.top customer service representatives and account managers, Plaintiff realized she had been scammed. Plaintiff also made

numerous unsuccessful attempts to transfer the cryptocurrency from the fake copycat exchange back to her Crypto.com wallet.

**B. Plaintiff's Forensic Tracing of Her Stolen Cryptocurrency**

37. When a transaction is made on the blockchain it is assigned a "transaction hash" ("TXID"). A transaction hash is a unique string of characters that is given to every transaction that is verified and added to the blockchain. A TXID is used to uniquely identify a particular transaction. All on-chain transactions (the transactions from or to external addresses) have a unique TXID that can be seen in transaction details. All on-chain transactions (depositing and withdrawing of funds) have a unique TXID that can be found in transaction details

38. Within the time frame of February 2, 2023, and July 11, 2023, Plaintiff made 7 transactions from her Crypto.com account to the fraudulent exchange. In total, Plaintiff transferred approximately 92.388 Ethereum (ETH) and 40,985.19 Tether (USDT) to the fraudulent exchange, which had a market value at the time of approximately $210,325.00 (USD).

39. Plaintiff has retained forensic cryptocurrency tracing experts who have traced Plaintiffs stolen assets on the blockchain. Attached hereto as Exhibit "A" is the tracing report completed by experts at CNC Intelligence, Inc. Plaintiff incorporates Exhibit "A" into his verified complaint.

40. As the tracing report shows, Defendant "1" with help of multiple co-

conspirators opened numerous cryptocurrency wallets owned by John Doe Defendants 1-10 to launder the stolen cryptocurrency to the identified foreign cryptocurrency exchanges.

## COUNT I
## RACKETEERING IN VIOLATION OF 18 U.S.C. § 1964

41. The operation of Defendant "1" and John Doe Defendants 1-10, individually and through their alleged business in trading cryptocurrency as cryptocurrency traders in their sophisticated global internet cryptocurrency fraud and conversion scheme constitutes a racketeering operation.

42. Defendant "1" directed and coordinated with John Doe Defendants 1-10 as yet unidentified additional parties ("RICO Enterprise," or "Enterprise") within the meaning of 18 U.S.C. § 1964(4), WHICH Enterprise was engaged in, or the affairs of which affected, interstate and foreign commerce.

43. Defendant "1" and John Doe Defendants 1-10 were each also a member of the RICO Enterprise, as each was a distinct person, separate and apart, from each of the RICO Enterprise members together.

44. The RICO Enterprise engaged in a pattern of racketeering activity.

45. Each person's participation was effective partly because each mimicked an actual on-going business (including the fraudulent platform www.short-termtradingset.top) with a presence in the marketplace: the United States and indeed worldwide.

46. As co-conspirators, the unlawful conduct of each member of the RICO Enterprise is attributed to every member, i.e. Defendant "1" and John Doe Defendants 1-10 as yet unidentified co-conspirators.

47. As set forth above, the RICO Enterprise engaged in the following predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1): Wire fraud in violation of 18 U.S.C. § 1343.

48. The predicate acts set forth in this Complaint, include defrauding Plaintiff beginning in February 2023, through domestic and international communication including but not limited to match.com and WhatsApp messaging, and domestic and international in-app communication.

49. The predicate acts set forth in this Complaint are related, in that they have the same or similar purposes, results, participants, and methods of commission, and are otherwise interrelated by distinguishing characteristics and are not isolated events. The related criminal schemes set forth in this Complaint constitutes a "pattern or patterns of racketeering activity" as defined in 18 U.S.C. § 1961(5).

50. The Defendants engaged in two or more predicated acts of racketeering within a period of ten years and committed at least one such act after October 15, 1970.

51. The information that would establish further predicate acts and further acts of racketeering is solely within the control of Defendants. Plaintiff requires

discovery to ferret out the further extent of predicate acts and further acts of racketeering, including the identity of similarly situated defrauded victims and the scope of the systematic fraud.

52. Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in acquisition of an interest in, or in the establishment or operation of, the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(a).

53. Defendants through a pattern of racketeering activity maintain, directly or indirectly, an interest in or control of the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(b).

54. Defendant "1" was associated with the RICO Enterprise, and conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described herein in violation of 18 U.S.C. § 1962(c).

55. Defendant "1" and/or John Doe Defendants 1-10 as yet unidentified additional parties, each entered into a conspiracy to conduct or participate, directly or indirectly, in the conduct of the RICO Enterprises' affairs through the pattern of

racketeering activity described herein, in violation of 18 U.S.C. § 1962(d).

56. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendant "1" and John Doe Defendants 1-10, jointly and severally, as follows:

    (a) damages;

    (b) statutory trebled damages pursuant to 18 U.S.C. § 1964(c);

    (c) punitive damages;

    (d) costs, including reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c);

    (e) costs;

    (f) interest; and

    (g) such other and further relief as this Court deems just and proper.

## COUNT II
## <u>CONVERSION</u>

57. Through fraudulent misrepresentations, Defendants convinced Plaintiff to invest her money into cryptocurrency.

58. Defendants then convinced Plaintiff to transfer her cryptocurrency to the fake exchange owned and operated by Defendants.

59. After Plaintiff transferred her cryptocurrency assets to the fake exchange, Defendants then transferred Plaintiff's cryptocurrency to cryptocurrency addresses owned by Defendant "1" and John Doe Defendants 1-10.

60. Plaintiff owned and had a right to possess the cryptocurrency.

61. Defendants substantially interfered with the cryptocurrency by knowingly or intentionally misappropriating the funds and taking possession of the cryptocurrency, preventing Plaintiff from having access to the cryptocurrency.

62. Defendants have refused to return Plaintiff's cryptocurrency after Plaintiff demanded its return on multiple occasions.

63. Defendants did not have Plaintiff's consent to convert Plaintiff's funds to their own use or to the use of others not entitled thereto and have exercised dominion and control over the funds to Plaintiff's exclusion and detriment.

64. Defendant's conduct was a substantial factor in causing Plaintiff harm.

65. As a direct and proximate result of Defendants' conversion and conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendant "1" and John Doe Defendants 1-10, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

## COUNT III
## UNJUST ENRICHMENT

66. Defendants received a direct benefit at Plaintiff's expense by

fraudulently convincing Plaintiff to transfer valuable cryptocurrency that Defendants converted from Plaintiff. Defendants have knowledge of the benefit Plaintiff conferred upon them and have retained such benefit.

67. The circumstances under which Plaintiff conferred, and Defendants accepted, such benefit render Defendants' retention of the benefits inequitable.

68. Equity required that Defendants return to Plaintiff the benefits she conferred upon Defendants.

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendant "1" and John Doe Defendants 1-10, jointly and severally, for damages, interest, costs, and such other further relief as this Court deems just and proper.

## COUNT IV
## IMPOSITION OF CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS

69. This is an action to impose a constructive trust upon the property taken from Plaintiff that is currently held by Defendants.

70. This action further calls for the restoration to Plaintiff of that wrongfully obtained property.

71. As set forth above, Defendants – through actual fraud, misappropriation, conversion, theft, or other questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

72. The cryptocurrency assets at issue are specific identifiable property and have been traced to Binance, Crypto.com, Gate.io, and Eigenfx.

73. Any and all assets being held by Defendants at Binance, Crypto.com, Gate.io, and Eigenfx must be held in trust for Plaintiff's benefit, and Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

74. The digital assets identified herein which are being held by Defendants at Binance, Crypto.com, Gate.io, and Eigenfx must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

**WHEREFORE**, Plaintiff demands the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently under the control of Defendant "1" and/or John Doe Defendants 1-10, in the identified cryptocurrency wallet addresses held at Binance, Crypto.com, Gate.io, and Eigenfx and further demands that the wrongfully obtained property be returned to Plaintiff.

## COUNT V
## CONSPIRACY

75. The Defendants conspired and confederated with each other to commit and committed Conversion (Count II); and Unjust Enrichment (Count III).

76. Plaintiff was harmed by Defendant's wrongful acts of conversion, RICO violations, and unjust enrichment. Relying on the false statements made by

Defendant "1", including that he was an expert in cryptocurrency investments, Plaintiff transferred her cryptocurrency assets to the fake cryptocurrency platform which were in actuality deposit addresses owned by John Doe Defendants 1-10.

77. Defendants conspired with others via the fraudulent website www.short-termtradingset.top and WhatsApp where they communicated with Plaintiff. Defendant "1" and John Doe Defendants 1-10 are the owners of the cryptocurrency deposit addresses where Plaintiff's stolen cryptocurrency was transferred.

78. As a result, Plaintiff has suffered damages as a direct and proximate result of Defendants' conspiracy.

79. Defendants are responsible for the harm caused by such wrongful acts because they each were part of a conspiracy to commit such violations.

80. Defendants each entered into an agreement to commit such wrongful acts.

81. Defendants were aware that each co-conspirator planned to commit such wrongful acts.

82. Defendants each agree with one another and intended that the wrongful acts be committed.

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendant "1" and John Doe Defendants 1-10, jointly and severally, for damages,

interest, costs, and such other and further relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

## VERIFICATION

I, ALONA C. AUSTRIA, hereby declare under penalty of perjury that I have read the foregoing COMPLAINT FOR CONVERSION OF STOLEN CRYPTOCURRENCY and verify that all statements made herein are true and correct to the best of my knowledge, understanding, and belief.

Dated: August 26, 2024        _/s/ ACauStria_____
                              ALONA C. AUSTRIA, Plaintiff


Dated: August 26, 2024        Respectfully Submitted,

                              /s/ Kiley L. Grombacher
                              Kiley L. Grombacher, Esq. (SBN 245960)
                              **BRADLEY/GROMBACHER LLP**
                              31365 Oak Crest Drive, Suite 240
                              Westlake Village, California 91361
                              Telephone: 805-270-7100
                              Facsimile:  805-270-7589
                              E-Mail:
                              kgrombacher@bradleygrombacher.com